# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ALEX VINCENT GOLOSOW,**

    **Plaintiff,**

**v.**                                                **Civil action no. 2:10cv88**
                                                          **(Judge Bailey)**

**JIM RUBENSTEIN, Commissioner, DOC,**
**WILLIAM M. FOX, Warden,**
**JOE HILL, A.W. Security,**
**BRADY STEPHENS, Magistrate,**
**SANDRA L. TANCYN, Unit Manager,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On July 14, 2010, the *pro se* plaintiff, Alex Golosow ("Golosow"), initiated this case by filing a complaint pursuant to 42 U.S.C. § 1983. On July 21, 2010, Golosow was granted leave to proceed *in forma pauperis*, and on July 30, 2010, he paid his initial partial filing fee. On March 23, 2011, the undersigned conducted an initial review of this matter and determined that summary dismissal was not warranted. Accordingly, an Order to Answer was entered which provided that the defendants be served through the United States Marshal.

On April 13, 2011, after service of the summons and complaint, the defendants filed a Motion to Dismiss with a Memorandum in Support thereof. A Roseboro Notice was issued on April 14, 2011. On April 19, 2011, Golosow filed a Response, and April 29, 2011, the defendants filed a Reply.

### II. Factual Background

The plaintiff, Alex Vincent Golosow ("Golosow") is a state inmate incarcerated at the St. Marys Correctional Center. He is serving a life sentence imposed by the Circuit Court of Roane County for First Degree Murder.

On October 29, 2009, he signed a Religious Assistant Fact Sheet on which he asserted that he formally became a Buddhist in October of 1975.(Doc. 25-1). On January 26, 2010, the plaintiff completed a Religious Special Diet Request and Authorization Form on which he indicated that due to his religious mandates, he should receive a vegetarian diet. Golosow's request was approved by defendant Sandy L. Tanczyn ("Tanczyn) on that same date. (Doc. 25-2).

Thereafter, Tanczyn learned that Golosow was receiving a regular tray with meat from the kitchen. When questioned about this, Golosow indicated that because he is confined to a wheelchair, he relied on an assistant to get his tray. He represented that the assistant would bring him the wrong tray, and he would be forced to eat the food instead of attempting to return the tray. Tanczyn then alerted the kitchen staff that Golosow was on a no flesh diet and requested that they assist him in receiving the proper tray.

Tanczyn was then informed that Golosow was purchasing meat and meat products from the commissary. When questioned, Golosow indicated that he sometimes purchased meat and meat products to give to other inmates who performed tasks for him. Tanczyn informed the plaintiff that this was a violation of DOC policy because inmates are not permitted to trade items or otherwise engage in a non-approved bartering system. When so advised, Golosow represented that he is "Tantric" Buddhist, who can eat meat.

Thereafter, the plaintiff was charged with Code Violation 2.17-Fraudulent Representation. At a hearing before defendant Brady Stephens ('Stephens") conducted on June 15, 2010, Golosow was found guilty of the violation and received 30 days loss of all privileges to be effective when space

became available in the Behavior Improvement Unit. However, Golosow did not lose any Good Time. (Doc. 25-4).

On January 14, 2011, Golosow completed another Religious Special Diet Request and Authorization Form on which he requested that he be removed from the no flesh diet. The request was approved on that same date. (Doc. 25-5).

### III. The Pleadings

**A. The Complaint**

In his somewhat rambling complaint, the plaintiff alleges that his 1st and 14th Amendment rights have been violated and his good name, flawless reputation, and highly prized honesty and integrity have been compromised by the actions of the defendants. In support, the plaintiff alleges that Tanczyn accused him of fraudulently representing his religious beliefs by eating and purchasing meat. However, Golosow maintains that he was put on a vegetarian diet, not a Buddhist diet, and further that he is a Tantric Buddhist, and therefore, permitted to eat meat.[1] He also maintains that Tanczyn is not an ordained chaplain and is an admitted atheist. The plaintiff further alleges that he is being harassed, threatened and stressed for purchasing, possessing and eating items that were legally purchased in the commissary and are not contraband. With respect to the other named defendants, Golosow indicates that they violated his religious freedom because "they all in some way contributed to enforcing Sandy L. Tanczyn's campaign to harass and punish me, under disguise of enforcing my religious beliefs and practices ..." (Doc. 1, p. 4). As relief, the plaintiff seeks the following: (1) the immediate termination of Tanczyn from the West Virginia DOC; (2) a reversal and vacation of his guilty finding at the disciplinary hearing and expungement from his record of all materials related to the hearing; and (3)

---

[1] The plaintiff specifically maintains that Tantric Buddhists can choose to eat meat and are generally not strict vegetarians like Chinese Buddhists.

compensatory damages.

## B. The Defendants' Motion

In response to the complaint, the defendants assert that the plaintiff is not entitled to relief for the following reasons:

    1. the plaintiff has failed to exhaust the administrative remedies available;

    2. the plaintiff cannot establish a § 1983 claim based on respondeat superior;

    3. Magistrate Brady Stephens is entitled to immunity;

    4. The plaintiff cannot pursue a due process claim as he was not subjected to an atypical punishment; and

    5. the defendants are entitled to qualified immunity.

## C. The Plaintiff's Opposition to the Defendants' Motion

In response to the defendants' motion, the plaintiff reiterates his claims against Tanczyn and embellishes his allegations regarding her conduct in having a disciplinary charge leveled against him which resulted in his confinement in the Behavioral Improvement Unit for 33 days. In an apparent effort to respond to the assertion that he failed to exhaust his administrative remedies, the plaintiff alleges that during each and every step of the D.O.C. Grievance process, he gave the defendants an opportunity to distance themselves and make the right decision. The plaintiff also expands his claim for relief to include a request for punitive damages and an order that the DOC change existing policy to "reflect a true representation of the Religious Establishment Clause." (Doc. 27, p. 6).

## D. The Defendant's Reply

In reply, the defendants reiterate theirs grounds for dismissing the complaint. In addition, the defendants specifically note that Golosow was not punished for his religious beliefs, but rather because he requested a no flesh diet and then either purchased or ate meat on 12 separate occasions.

4

Elaborating further, the defendants note that Golosow's false representations are the issue, not his religion.

### IV. Standard of Review

#### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than

merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

B. **Motion for Summary Judgment[2]**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing

---

[2] "If on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." See Rule 12(d) of the Federal Rules of Civil Procedure.

6

the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

### IV. Analysis

**A. Defendants Rubenstein and Fox**

Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Therefore, in order to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d

7

Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzo v. Good, 423 U.S. 362 (1976).

In this case, Golosow does not make any specific allegations against Commissioner Rubenstein or Warden Fox, [3] or assert that they were personally involved in any violation of his constitutional rights. Rather, it appears that Golosow merely names them in either their official or supervisory capacities. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. *Id.* at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. *Id.* (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)). In this case, the plaintiff fails to assert that a policy or custom of the entity played a part in the alleged violation of his constitutional rights.

As to supervisory capacity, there is no *respondeat superior* liability under § 1983. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F. 2d 926,

---

[3] Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim *showing that the pleader is entitled to relief*, and (3) a demand for judgment for the relief the pleader seeks." (Emphasis added). "And, although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant." Migdal v. Rowe Price-Fleming International, Inc., 248 F.3d 321, 326 (4th Cir. 2001) (citation and internal quotations omitted).

928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, supra. When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).[4]

In this instance, the plaintiff fails to make any allegations which reveal the presence of the required elements for supervisory liability. Consequently, the plaintiff fails to state a claim against Commissioner Rubenstein or Warden Fox, and they should be dismissed as defendants in this action.[5]

## B. Defendant Hill

---

[4] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Shaw, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

[5] To the extent the plaintiff asserts that they defendants were deliberately indifferent to his serious medical needs by denying his administrative grievances, or by failing to respond to such grievances, that claim is also without merit as this is not the type of personal involvement required to state a claim. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003). Additionally, to the extent that defendant Hill signed off on the incident report which led to Golosow's disciplinary hearing, he was clearly acting in his official capacity when he did so.

9

Although not in his complaint, in his response to the defendant's Motion to Dismiss, the plaintiff makes a specific allegation against Hill. Specifically, he alleges that Hill signed off on the violation report that ultimately led to his disciplinary proceeding and subsequent placement in "punitive segregation." (Doc. 4). No where in the plaintiff's filings does he indicate that he is suing any of the defendants in either their official or individual capacity.

The United States Supreme Court has held that state officials sued in their official capacities do not constitute "persons" within the language of 42 U.S.C. § 1983. Will v. Michigan. 491, U.S. 58 (1989). The Court considered a suit against a state official in his or her official capacity the equivalent of a suit against the state itself. Id. at 65. The Court concluded that, absent any congressional intent to override states' immunity, the eleventh amendment bars § 1983 suits against state employees in their official capacity. See id. at 56-57. Therefore, to the extent that the plaintiff is seeking to sue Hill in his official capacity, the same does not state a claim under § 1983.

Conversely, a suit against an official in his individual capacity does not seek payment from the state treasury, but from the personal funds of the individual, and therefore is not a suit against the state or the state office that the individual occupies, and the individual is not protected by the holding of Will. See Pontarelli v. Stone, 930 F.2d 104. 113 n. 17 (1st Cir. 1991). Accordingly, this court must analyze whether the complaint alleges that Hill acted either outside the scope of his respective office or, if within the scope, acted in an arbitrary manner grossly abusing the lawful powers of her office. Scheuer v. Rhodes, 416 U.S. 232, 235 (1974).

Here is it is clear that Hill was acting within the scope of his office as Assistant Warden when he signed the incident report. Furthermore, Golosow has presented nothing to suggest that he acted in an arbitrary manner which grossly abused the lawful powers of his office. Therefore, Golosow's complaint against Hill is clearly a complaint against him only in his official capacity and is barred by §

1983.

C. **Defendant Stephens**

In Butz v. Economou, 438 U.S. 478, 508 (1978), the Supreme Court declared that "[a]lthough a qualified immunity from damages liability should be the general rules for executive officials charged with constitutional violations, our decisions recognize that there are some officials whose special functions require a full exemption from liability." Applying the reasoning set forth in Butz, the Fourth Circuit has concluded that absolute immunity attaches to certain members of the executive branch when their role in administrative adjudicatory proceedings is functionally comparable to that of a judge. See Ward v. Johnson, 690 F.2d 1098 (4th Cir. 1982).

It is clear from reading the State of West Virginia Division of Corrections Policy Directive Number 325, that the role of a correctional magistrate[6] is functionally comparable to that of a judge. Accordingly, Magistrate Stephens is entitled to absolute immunity and should be dismissed as a defendant.

D. **Defendant Tanczyn**

Under the PLRA, a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[7] and is required even when

---

[6]A correctional magistrate is a Division off Corrections' employee who is employed independent of the institutional chain of command to conduct inmate disciplinary hearings pursuant to division policy. Policy Directive 325.00 III Definitions.

[7]Id.

11

the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior* to filing a complaint in federal court. Porter v. Nussle, 534 U.S. 516, 524 (*citing* Booth, 532 U.S. at 741)(emphasis added). Moreover, an inmate may procedurally default his claims by failing to follow the proper procedures. See Woodford v. Ngo, 548 U.S. 81 126 S.Ct. 2378 (2006)(recognizing the PLRA provisions contain a procedural default component).

The WVDOC has established a three level grievance process for prisoners to grieve their complaints in an attempt to resolve the prisoners' issues. The first level involves filing a G-1 Grievance Form with the Unit Supervisor. If the inmate receives no response or is unsatisfied with the response received at Level One, the inmate may proceed to Level Two by filing a G-2 Grievance Form with the warden/administrator. Finally, the inmate may appeal the Level 2 decision to the Commissioner of the Division of Corrections.

In support of their motion, the defendants have filed the sworn affidavit of Deputy Warden Tony LeMaster. In his affidavit, Mr. LeMaster states that "the plaintiff has failed to file a grievance related to failure to accommodate his Tantric Buddhist diet or any grievance related to religion...or to the actions of Sandy L. Tanczyn regarding any action taken about his religion or any actions by Sandy Tanczyn."(Doc. 29-1). This sworn affidavit shows that the plaintiff did not exhaust his administrative remedies. Thus, the defendants' motion establishes their initial burden under Fed.R.Civ.P 56(c) of demonstrating the absence of a genuine issue of material fact.

Therefore, as previously explained, in order to survive the defendants' motion for summary judgment, the plaintiff must set forth facts showing there is a genuine issue for trial. To carry this burden, the plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita, 475 U.S. at 856 (*citing* DeLuca v. Atlantic Refining Co., 176 F.2d 421, 423 (2nd Cir. 1949)).

This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 246. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50.

In this instance, Golosow must provide probative evidence to show that he exhausted his administrative remedies on the issues raised in this complaint. Although he alleges that he gave the defendants "during each and every step of the DOC Grievance process" the opportunity to distance themselves and make the right decision, he has presented nothing to demonstrate that he did, in fact, exhaust the administrative grievance procedure. Rather, it is clear that the plaintiff simply appealed the results of his disciplinary proceeding[8], which does not satisfy the requires of exhausting a § 1983 claim. Clearly, the plaintiff has not carried his burden under Rule 56(c), and the plaintiff's complaint must be dismissed in its entirety, including his claims against Tanczyn and ant attempt to challenge the conditions of his confinement in the Behavior Improvement Unit..

## V. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the defendants' Motion to Dismiss (Doc. 24) be **GRANTED**, and the plaintiff's complaint be **DISMISSED** for failure to state a claim upon which relief can be granted.

Within fourteen (14) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this

---

[8]Doc. 1-1.

Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested. In addition, the Clerk shall provide a copy to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: June 27, 2011

        /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE